UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FREDDIE JOHNSON,                                    :

                  Petitioner,        :        **<u>AMENDED</u>**
                                    **<u>MEMORANDUM DECISION</u>**

         - v. -                 :
                                    18-CV-0493 (DC)

KATHLEEN GERBING, Superintendent,       :

                  Respondent.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:        FREDDIE JOHNSON
                      Petitioner *Pro Se*
                      DIN 11-A-0773
                      Queensboro Correctional Facility
                      47-04 Van Dam Street
                      Long Island City, NY  11101-3081

                      ERIC GONZALEZ, Esq.
                      Kings County District Attorney
                      *By*:    Victor Barall, Esq.
                            Assistant District Attorney
                      350 Jay Street
                      Brooklyn, NY  11201
                            Attorney for Respondent

CHIN, Circuit Judge:

        On February 9, 2011, in the Supreme Court of the State of New York,

Kings County, petitioner Freddie (also known as "Frankie") Johnson was convicted, on a

guilty plea, of one count of second-degree arson, in violation of N.Y. Penal Law § 70.45.

*See* Dkt. 9 at 3-13.  The charge related to a March 16, 2010, incident in which Johnson set

three fires inside the apartment he shared with his girlfriend. The court principally sentenced Johnson to ten years' imprisonment and five years' post-release supervision. *Id.* at 13. The sentence included an enhancement, pursuant to N.Y. Penal Law § 70.04, on account of Johnson's status as a violent felony offender based on a conviction in 1987 for first-degree robbery. *See id.* at 4, 10-13.

On January 14, 2018, proceeding *pro se*, Johnson petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). Dkt. 1. The Kings County District Attorney's Office, representing Respondent, filed its opposition to the Petition on May 16, 2018. Dkt. 9.

Johnson makes four arguments in support of the Petition. First, he argues he was prejudiced by a delay in the appellate process when he sought direct review of his conviction. Dkt. 1 at 7-9. Next, he contends his counsel was ineffective because counsel failed to challenge whether Johnson's prior conviction was constitutional. *Id.* at 10-11. Third, Johnson argues his guilty plea was defective because the court effectively coerced him into accepting the plea agreement. *Id.* at 11-12. Finally, he contends his plea allocution was not knowing, voluntary, and intelligent because the allocution did not establish that he had the intent and knowledge necessary for conviction. *Id.* at 13.

The case was reassigned to me on February 3, 2023. For the reasons set forth below, the Petition is DENIED.

*STATEMENT OF THE CASE*

I.    *The Facts*[1]

On March 16, 2010, Johnson's girlfriend, Barbara Bell, arrived home late. Johnson and Bell lived together in a three-story apartment building located at 1909 Pacific Street in Brooklyn.  Dkt. 9 at 2.  Johnson became angry with Bell for coming home late and locked her outside the building's lobby door, breaking the key in the lock to prevent her from entering.  *Id.*  Johnson then went back into their apartment, blocked the door with a chair, and threw a bottle through a window.  *Id.*  The bottle broke on the sidewalk near Bell, who dialed 911.  *Id.*

From about 7:30 p.m. to 11:48 p.m., a police officer and members of the Police Emergency Services Unit attempted to negotiate with Johnson, to no avail.  *Id.*  At one point, Johnson told an officer that if the officer wanted to come into the apartment, he would have to do so "with guns blazing."  *Id.*  At 11:48 p.m., police personnel on the street outside the building noticed a large fire in the apartment and called the fire department.  *Id.*  After the fire was extinguished, the fire marshal determined that Johnson had set three separate fires.  Dkt. 9-2 at 26.

For these and other acts, a Kings County grand jury indicted Johnson for arson in the second, third, and fifth degrees; reckless endangerment in the first and

---

[1]    The facts are primarily drawn from the affidavit submitted in opposition to the Petition. The recitation of facts set forth in the affidavit are supported by detailed citations to the record, including the transcript of the plea proceedings.  *See* Dkt. 9.

second degrees; criminal mischief in the second and fourth degrees; criminal possession

of a weapon in the fourth degree; attempted assault in the third degree; criminal

contempt in the first and second degrees; and aggravated harassment in the second

degree.  Dkt. 9 at 3.

## II.     *State Court Proceedings*

### A.     *The Guilty Plea and Sentencing Proceedings*

On January 26, 2011, Johnson appeared with counsel in the Kings County

Supreme Court (D'Emic, *J.*).  Dkt. 9 at 3.  The People indicated that because the 1987

Conviction rendered Johnson a violent felony offender, his minimum sentence would

be ten years' imprisonment.  *Id.* at 3-4; Dkt. 9-3 at 12-13.  The People offered Johnson the

opportunity to plead guilty to second-degree arson in satisfaction of the indictment; in

return, Johnson would receive a sentence consisting principally of ten years'

imprisonment.  Dkt. 9 at 4.  Following colloquies between Johnson and the court and

consultations between Johnson and his counsel, Johnson indicated he was prepared to

accept the plea agreement.  *Id.*

When the court allocuted Johnson, it asked him whether the crime took

place in Brooklyn and whether he had "intentionally cause[d] damage to a building by

starting a fire when [he] pretty much knew somebody else was present in the place."  *Id.*

at 6; Dkt. 9-1 at 6.  Johnson answered both questions in the affirmative.  Dkt. 9 at 6; Dkt.

9-1 at 6.  Following an unrelated colloquy, the court returned to the issue of whether

others were present in the building, stating, "I want to be clear," and asking Johnson,

"You knew somebody was in, you knew somebody was present in the apartment when

you set the fire?" Dkt. 9-1 at 7. Johnson's lawyer clarified that Johnson could answer in

the affirmative if he knew "there were circumstances to render the presence of such

person . . . a possibility." She added, "[s]omebody might have been in there. It was an

occupied residence of the building." *Id.*[2] Following this clarification, Johnson replied to

the court in the affirmative. *Id.*

Before the court accepted the plea, however, it directed Johnson's counsel

to review with him a "predicate statement" prepared by the People indicating that, *inter

alia,* he had been convicted of first-degree robbery, a class B violent felony offense, in

the Kings County Supreme Court, in 1987 (the "1987 Conviction"). Dkt. 9 at 7-8.[3] After

a pause, Johnson's counsel stated that Johnson wished to challenge the constitutionality

of the 1987 Conviction. *Id.* at 8. Initially, Johnson said he would accept the plea

agreement but "stand mute" as to whether the 1987 Conviction was constitutional. *Id.*;

*see also* Dkt. 9-3 at 27. In response to further questioning by the court, however, Johnson

---

[2]     In New York, a person commits second-degree arson "when he intentionally damages a
building or motor vehicle by starting a fire, and when (a) another person who is not a
participant in the crime is present in such building or motor vehicle at the time, and (b) the
defendant knows that fact or the circumstances are such as to render the presence of such a
person therein a reasonable possibility." N.Y. Penal Law § 150.15.

[3]     The parties' briefs on direct appeal indicate that the predicate statement also referred to
a conviction in 1976 for first-degree manslaughter. *See* Dkt. 9-3 at 12, 39 n.3. Johnson was a
juvenile offender at the time he committed that offense, however, so his conviction for
manslaughter could not serve as a predicate for a sentence enhancement as a violent felony
offender. *See* Dkt. 9-3 at 39 n.3.

denied that he was the defendant in the 1987 Conviction.  Dkt. 9 at 10-11.  The court

expressed frustration at Johnson's position on the 1987 Conviction, stating that the

situation had become "ridiculous," the court was "not here to play games," and the case

would be put down for trial.  *Id.* at 11.

On further discussions among the court, Johnson, and Johnson's

counsel, Johnson agreed he would admit he had been convicted in 1987 under the name

Frankie Johnson but "as to everything else" would "stand[] mute."  *Id.* at 12.  Before

accepting the plea, the court again asked Johnson whether he wished to plead guilty.

Dkt. 9-1 at 16.  Johnson said yes, and the court accepted the plea.  *Id.*

On February 9, 2011, Johnson appeared with counsel for sentencing.  Dkt.

9 at 13.  The court imposed the agreed-upon sentence of ten years' imprisonment and

five years' post-release supervision.  *Id.*

### B.    *Johnson's Motion to Vacate the Judgment*

On February 5, 2012, Johnson moved *pro se* in the Kings County Supreme

Court to vacate the judgment of conviction pursuant to N.Y. Crim. Proc. Law § 440.10.

*Id.* at 13-14; Dkt. 9-2 at 2-24.  In the motion, he claimed his plea was invalid because (1)

he was intoxicated at the time of the crime and therefore was unable to form the

requisite intent; (2) he received ineffective assistance of counsel because counsel did not

raise an intoxication defense; and (3) his plea was not knowing and voluntary because,

although the degree of arson to which he pled guilty required that other people be

6

present in the building to which he set fire, he was in fact the only person in the building.  Dkt. 9 at 14; Dkt. 9-2 at 13-21.  On May 23, 2012, the court denied the motion, holding that Johnson's claims were procedurally barred by N.Y. Crim. Proc. Law § 440.10(2)(c) and, in any event, without merit.  Dkt. 9-2 at 40-42.  On October 4, 2012, the Appellate Division denied Johnson's application for leave to appeal.  *Id.* at 43.[4]

### C. *Johnson's Direct Appeal*

In 2011, Johnson appealed from the judgment of conviction.  Dkt. 9 at 15.[5] Newly assigned counsel raised two claims on Johnson's behalf:  (1) the trial court erred because, before accepting Johnson's plea, it did not conduct a hearing pursuant to N.Y. Crim. Proc. Law § 400.15 to determine whether he should be sentenced as a violent felony offender; and (2) the court coerced Johnson into pleading guilty.  Dkt. 9-3 at 3.

---

[4]     Between his motion to vacate the judgment and his direct appeal, Johnson also filed a motion for a writ of error *coram nobis*, alleging that the People had not allowed his appellate counsel access to the transcripts of previous proceedings, *see* Dkt. 1 at 6, 8 at 7, as well as a motion for a reconstruction hearing, seeking to correct the record of his previous convictions, *see* Dkt. 1 at 8, 8 at 10-11.  Both motions were denied.  *See* Dkt. 1 at 7, 9.

[5]     The exact date Johnson filed his notice of appeal is unknown, but the Appellate Division assigned his appeal a docket number beginning with 2011.  *Johnson I*, 66 N.Y.S.3d at 885. Johnson filed his appellate brief on January 10, 2017.  Dkt. 9 at 15.  It is unusual for a defendant to perfect a direct appeal so long after the judgment of conviction is entered, and indeed, delay in the appellate process is one of the grounds on which Johnson bases his Petition.  Johnson's first appellate counsel withdrew with leave of court when, after she was unable to obtain relevant materials from the People, Johnson filed an ethics complaint, followed by a civil complaint under 42 U.S.C. § 1983, accusing her of contributing to the delay.  *See* Dkt. 1 at 7, 8 at 8-9, 8-5 at 9-10.  The Legal Aid Society was then appointed as Johnson's appellate counsel but moved to withdraw because Johnson, who had been represented by Legal Aid counsel at the plea hearing, was claiming ineffective assistance.  *See* Dkt. 8 at 9-10.  Neither the People, in responding to Johnson's direct appeal, nor the Appellate Division, in ruling on it, suggested the appeal had not been timely filed.  *See* Dkt. 9-3 at 31-62, 94-98; *Johnson I*, 66 N.Y.S.3d at 885-86.

Johnson filed *pro se* a supplemental brief raising several additional claims:  (1) his

allocution was legally insufficient because it did not establish he had the requisite intent

to commit second-degree arson; (2) his counsel was ineffective because she failed to

advise him not to enter the plea, in light of the defect in the allocution; and (3) his

counsel was also ineffective because she did not contest the constitutionality of the 1987

Conviction.  Dkt. 9 at 15-16; Dkt. 9-3 at 74.  In his discussion of ineffective assistance of

counsel, Johnson contended that he was also deprived of due process because of the

delay between his conviction and his then-still-pending appeal.  Dkt. 9-3 at 79-80.  On

January 17, 2018, the Appellate Division affirmed Johnson's conviction.  *People v.

Johnson*, 66 N.Y.S.3d 885 (2d Dep't 2018) ("*Johnson I*").  The Court of Appeals denied

leave to appeal.  *People v. Johnson*, 108 N.E.3d 505 (N.Y. 2018) (Feinman, J.) ("*Johnson II*").

Johnson filed the Petition on January 14, 2018.  Dkt. 1 at 1.  On April 30,

2018, he filed a motion for summary judgment, which in substance restated the claims

in the Petition.  Dkt. 8.  Via an entry on the docket, this Court denied Johnson's motion

without prejudice on October 22, 2018.[6]

---

[6]     Inexplicably, nearly five years have elapsed since the Petition was fully briefed.  During
that time, Johnson was released from incarceration.  *See* N.Y. Dep't of Corrs. & Cmty.
Supervision, *Incarcerated Lookup*, *available at* https://nysdoccslookup.doccs.ny.gov (search for
DIN 11A0773).  Johnson's post-release supervision, which began October 2, 2018, may continue
through October 2, 2023.  *See id.*  Not only because Johnson continues to be subject to post-
release supervision but also because his conviction may carry collateral consequences, the
Petition is not moot.  *See Spencer v. Kemna*, 532 U.S. 1, 7-8 (1998).

*DISCUSSION*

I.   *Federal Review of State Convictions*

As a threshold matter, 28 U.S.C. § 2254 provides that federal courts may review state court convictions only where the petitioner is or was "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law."  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citation and internal quotation marks omitted).

A federal court may not grant a habeas petition where the petitioner is or was in custody pursuant to a judgment of a state court unless the petitioner "has exhausted the remedies available in the courts of the State" or such process is unavailable or ineffective.  28 U.S.C. § 2254(b)(l)(A)- (B); *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) ("[A] state prisoner is required to exhaust all of his available state remedies before a federal court can consider his habeas application.").

Moreover, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment."  *Cone v. Bell*, 556 U.S. 449, 465 (2009) (citation and internal quotation marks omitted).  That is, federal courts may not review a state court ruling that "fairly appear[s] to rest primarily on state procedural law," so long as the procedural bar is

"adequate to support the judgment." *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (citations omitted) (original alteration).  Federal courts in this Circuit have repeatedly held that the gatekeeping provisions of New York law that govern a petitioner's failure to raise a claim on direct appeal "represent[] the application of a 'firmly established and regularly followed' New York rule." *Williams v. Goord*, 277 F. Supp. 2d 309, 318-19 (S.D.N.Y. 2003) (citations omitted).

Next, a federal court may not grant a habeas petition with regard to a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state court must be accorded "substantial deference." *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015).  "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam).

Finally, when a habeas petitioner has entered a guilty plea, the petitioner has waived his right to raise most claims based on alleged deprivations of constitutional

rights that occurred prior to the entry of the plea. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Parisi v. United States,* 529 F.3d 134, 138 (2d Cir. 2008). The petitioner may argue, however, that a plea agreement was not knowing and voluntary or that the plea resulted from the ineffective assistance of counsel. *Parisi*, 529 F.3d at 138.

## II.   *Analysis*

Construed liberally, the Petition raises four claims: (1) Johnson was deprived of due process because of the delay between his conviction and his appeal; (2) Johnson's counsel was ineffective during his plea hearing; (3) Johnson's plea was unconstitutional because the court coerced him into pleading guilty; and (4) the plea allocution was legally insufficient. Dkt. 1 at 7-14. I address each claim in turn.

### A.   *The Appellate Delay Claim*

First, Johnson claims he was deprived of due process because more than five years elapsed between his conviction and the filing of his brief on direct appeal. Dkt. 1 at 7. Although criminal defendants have a right under the U.S. Constitution to a speedy trial, *see Barker v. Wingo,* 407 U.S. 514 (1972), and the Second Circuit has held that this right extends to a timely appeal, *see Cody v. Henderson*, 936 F.2d 715, 718 (2d Cir. 1991), a petitioner is entitled to habeas relief only if the delay caused substantial prejudice to the petitioner's appeal. *See Stubbs v. Leonardo*, 973 F.2d 167, 169 (2d Cir. 1992); *Muwwakkil v. Hoke*, 968 F.2d 284, 285 (2d Cir. 1992). That is, the petitioner must show a "reasonable probability that, but for the delay, the result of the appeal would

have been different." *Elcock v. Henderson*, 947 F.2d 1004, 1008 (2d Cir. 1991) (quoting *Mathis v. Hood*, 937 F.2d 790, 794 (2d Cir. 1991)).  Because Johnson alleges this violation took place after he entered his guilty plea, his plea did not result in the waiver of this claim.  *See Tollett*, 411 U.S. at 267.

Johnson, however, cannot show that the delay prejudiced the outcome of his appeal.  He claims that his "original counsel continuously delayed perfecting his direct appeal" and his "subsequent counsel who represented him in the trial court, alleged a conflict of interest in their application for removal."  Dkt. 1 at 7 (cleaned up).  Indeed, the lawyer who represented Johnson on direct appeal was his third appellate attorney, the first apparently having been removed for delay and the second for conflict of interest.  In the end, however, Johnson's appeal "was actually heard."  *Simmons v. Reynolds*, 898 F.2d 865, 869 (2d Cir. 1990).  The quality of his appellate brief plainly shows he was represented by "competent counsel," and therefore "any prejudice he may have suffered from the delay did not harm his ability to get a fair, albeit late, review of his conviction."  *Simmons*, 898 F.2d at 869; *accord People v. Wallace*, 552 N.Y.S.2d 723, 725 (4th Dep't 1990).  Moreover, Johnson does not allege that the delay was due to errors on the part of the prosecution, rather than his own counsel.  *See Brightley v. Health*, No. 11 Civ. 1761, 2016 U.S. Dist. LEXIS 33343, at *18 (S.D.N.Y. Mar. 15, 2016).  Accordingly, Johnson's claim is without merit.

**B.**   *The Ineffective Assistance of Counsel Claim*

Second, Johnson claims his counsel at the plea hearing was constitutionally ineffective because, first, she failed to advise him not to enter the guilty plea and, second, she did not contest the constitutionality of the 1987 Conviction. Because this claim concerns the performance of Johnson's counsel at the plea proceedings, it is not waived.  *See Parisi*, 529 F.3d at 138.  It is, however, unexhausted. On direct appeal, the Appellate Division dismissed this claim as unreviewable, *Johnson I*, 66 N.Y.S.3d at 885-86, and the Court of Appeals denied Johnson's application for leave to appeal, *Johnson II*, 108 N.E.3d at 505.  Johnson could have claimed ineffective assistance at the plea proceedings in his post-conviction motion pursuant to N.Y. Crim. Proc. Law § 440.10, but he did not do so.  *See* Dkt. 9-2 at 3.[7]  Therefore, he did not exhaust his available state remedies with respect to this claim, and it is now procedurally barred.

Even considered on the merits, however, Johnson's claim still fails.

To prevail on a claim of ineffective assistance of counsel under federal law, a petitioner must (1) show that counsel's representation was deficient in that it fell below an "objective standard of reasonableness"; and (2) establish prejudice by demonstrating a reasonable probability that, "but for counsel's unprofessional errors,

---

[7]   To the extent that Johnson's section 440 motion alleged the ineffective assistance of counsel, it was only in connection with his putative intoxication defense.  *See* Dkt 9-2 at 16-18.

the result of the proceeding would have been different." *Strickland v. Washington,* 466

U.S. 668, 688, 694 (1984).  This standard applies to petitioners who plead guilty as well

as to those who are convicted upon a jury's verdict:  A petitioner who pleads guilty

"must show that there is a reasonable probability that, but for counsel's errors, he would

not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474

U.S. 52, 59 (1985).

       "Even under *de novo* review, the standard for judging counsel's

representation is a most deferential one." *Harrington,* 562 U.S. at 105.  "Establishing that

a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more

difficult.  The standards created by *Strickland* and § 2254(d) are both highly deferential,

and when the two apply in tandem, review is doubly so." *Id.* (citations and internal

quotation marks omitted).  "The operative question in reviewing a state court's

*Strickland* ruling is thus 'not whether a federal court believes the state court's

determination was incorrect, but rather whether that determination was objectively

unreasonable -- a substantially higher threshold.'" *Waiters,* 857 F.3d at 478 (quoting

*Schriro v. Landrigan,* 550 U.S. 465, 473 (2007)) (internal marks omitted).  "In such

circumstances, federal courts are to afford both the state court and the defense attorney

the benefit of the doubt." *Woods v. Etherton,* 136 S. Ct. 1149, 1151 (2016) (per curiam)

(internal quotation marks omitted).

Under New York law, the standard to establish an ineffective assistance of counsel claim is lower than the standard under federal law. *See People v. Honghirun*, 78 N.E.3d 804, 807 (N.Y. 2017). In New York, a defendant must show only "that counsel failed to provide meaningful representation." *People v. Alvarez*, 125 N.E.3d 117, 120 (N.Y. 2019) (citing *People v. Stultz*, 810 N.E.2d 883 (N.Y. 2004); *People v. Baldi*, 429 N.E.2d 400 (N.Y. 1981)). Unlike the federal standard, *see Strickland*, 466 U.S. at 694, in New York, the defendant is not required to demonstrate that he was prejudiced by the ineffective assistance, *see Alvarez*, 125 N.E.3d at 120.

Johnson's Petition does not specify whether he is asserting a state or federal constitutional right, although the court that considered his post-conviction motion assessed his claim only under the federal standard. For the sake of completeness, I consider whether he has made out a claim of ineffective assistance under New York's more lenient standard. Because Johnson's counsel did not fail to provide meaningful representation, it necessarily follows that his counsel's performance did not fail *Strickland*'s two-pronged test, especially in light of the greater deference owed on habeas review. *See Schriro*, 550 U.S. at 473.

Johnson claims his counsel was ineffective because she failed to challenge the constitutionality of the 1987 Conviction, which was allegedly defective because Johnson's lawyer at the time "failed to object" to the trial court's "procedural errors [i]n response to jury notes and inconsist[e]nt or repugnant verdicts." Dkt. 1 at 10. Johnson,

15

however, provides no support for this claim. *See* Dkt. 9 at 34. The absence of evidence, combined with the length of time that elapsed between the 1987 Conviction and Johnson's plea hearing, likely led counsel to surmise, reasonably, that the argument Johnson wished to raise would not be successful.[8] Moreover, Johnson gave conflicting explanations at his plea allocution, first denying that he was the defendant in the 1987 Conviction and then admitting that he had been convicted in 1987 under the name "Frankie Johnson." *Id.* at 10-12. Finally, as Respondent points out, counsel secured for Johnson the minimum sentence for his conduct -- as favorable an outcome as might be expected in light of the substantial evidence against him. *See* Dkt. 9 at 9, 30-32. Therefore, Johnson cannot establish that his counsel's performance fell below either the state or the federal standard, and he also cannot demonstrate actual prejudice because he received the minimum sentence the court could lawfully impose. For all these reasons, Johnson's claim fails.

---

[8]     In a separate section of the Petition, Johnson appears to claim his counsel was also ineffective because she failed to contend that Johnson did not intend to damage the building when he set the fires. *See* Dkt. 1 at 13. To the extent that this, too, is an argument about ineffective assistance, there is no indication that counsel's performance fell below the standard set by *Strickland*. Indeed, the notion that Johnson did not intend to damage the building borders on the frivolous: He started three separate fires, and his aggressive conduct lasted several hours. In similar fashion, Johnson also takes issue with his lawyer's failure to contend that no other person was present in the building when the fires were set. *See id.* Yet as I discuss below, Johnson admitted in his plea allocution that he was aware others were in the building, *see* Dkt. 9 at 6, and police officers were at the scene (sometimes inside the building) for more than four hours, *see id.* at 2-3. Johnson's counsel could reasonably have surmised that reliable police testimony would overcome any claim that other people were not present.

C.      *The Judicial Coercion Claim*

Third, Johnson claims his plea was unconstitutionally coerced because the court threatened that, if he refused to plead guilty, the case would go to trial.  This claim was among the "remaining contentions" on Johnson's direct appeal that the Appellate Division rejected, in passing, as "without merit."  *Johnson I*, 66 N.Y.S.3d at 886. Johnson did not present this claim as part of his motion to vacate the judgment.  *See* Dkt. 9-2 at 6-7.  The claim is not waived as a result of Johnson's guilty plea because it fundamentally concerns whether the plea was knowing and voluntary.  *See Parisi*, 529 F.3d at 138.

A guilty plea is valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Gomez v. Miller*, No. 19-CV-1571, 2021 WL 5446979, at *7-8 (N.D.N.Y. Nov. 22, 2021) (collecting cases).  As to whether a plea was made intelligently, the Supreme Court has placed particular stress on whether a defendant was advised by "competent counsel."  *Alford*, 400 U.S. at 31.  As to whether the plea was made voluntarily, courts may consider all relevant circumstances, including whether the defendant faced a more severe sentence if found guilty at trial, whether the defendant had previous contact with the criminal justice system, and whether the court described the defendant's options.  *See Magee v. Romano*, 799 F. Supp. 296, 300 (E.D.N.Y.

1992).  Moreover, "[i]t is settled law that statements made in a plea allocution 'carry a strong presumption of verity.'" *Molina Rios v. United States*, No. 19-cv-243, 2019 WL 2524542, at *4 (W.D.N.Y. June 19, 2019) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).  "[W]here a petitioner has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on habeas review may rely on the petitioner's sworn statements and hold him to them." *Scott v. Superintendent, Mid-Orange Corr. Facility*, No. 03-CV-6383, 2006 WL 3095760, at *9 (E.D.N.Y. Oct. 31, 2006).

Here, nothing the court said or did rendered Johnson's plea involuntary. The court warned him of the consequences of challenging the constitutionality of the 1987 Conviction, which included rejecting the plea agreement the People had offered and proceeding to trial on all counts of the indictment. Dkt. 9 at 37.  Johnson would have faced significant sentencing exposure at trial; as the People pointed out on Johnson's direct appeal, had he been convicted on second-degree arson alone, his term of imprisonment could have been as long as twenty-five years.  Dkt. 9-3 at 52.

Against this backdrop, the court's merely informing Johnson of the legal consequences of his actions does not constitute coercion. *See Desrosiers v. Phillips*, No. CV-05-2941, 2006 WL 2092481, at *10 (E.D.N.Y. July 27, 2006) ("The record clearly indicates that [the court] merely informed the petitioner of the maximum sentence he

could receive if convicted of the charges in the indictment. The judge did not threaten

petitioner with the maximum sentence if he did not accept the plea offer or in any other

way coerce petitioner into accepting the plea."). The court expressed frustration at

Johnson's insistence on challenging the 1987 Conviction, *see* Dkt. 9 at 11, but that does

not rise to the level of coercion. Although caselaw on judicial coercion is scarce, the

Supreme Court and Second Circuit have both held that statements similar to the court's,

when made by prosecutors, are not unconstitutionally coercive. *See Bordenkircher v.*

*Hayes*, 434 U.S. 357, 365 (1978); *United States v. Doe*, 537 F.3d 204, 212 (2d Cir. 2008). For

these reasons, the Appellate Division's decision to reject Johnson's judicial coercion

claim was reasonable, and he is therefore not entitled to habeas relief. *See* 28 U.S.C.

§ 2254(d)(1).

### D.   *The Sufficiency of the Allocution Claim*

Finally, Johnson claims his plea allocution was legally insufficient because

it failed to establish that he had the intent and knowledge required to commit second-

degree arson. The court that decided Johnson's motion for post-conviction relief

characterized this claim as "specious," not least because Johnson conceded in his motion

papers "that he was aware of the presence of emergency personnel [in the building]

when he started the fire." Dkt. 9-2 at 41; *see id.* at 11. Subsequently, on direct appeal, the

Appellate Division also rejected Johnson's claim about the sufficiency of the allocution,

holding that the claim was unpreserved for appellate review and, "[i]n any event, the factual allocation was sufficient." *Johnson I*, 66 N.Y.S.3d at 885.  Because New York's procedural rules governing the preservation of claims for appellate review are "firmly established and regularly followed," Johnson's claim is procedurally barred. *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999).  It is not, however, waived because it concerns the possibility that his plea was not knowing and voluntary. *See Parisi*, 529 F.3d at 138.

Even when considered on the merits, Johnson's claim is, as the Appellate Division concluded, baseless.  In New York, a judge who accepts a guilty plea "has a vital responsibility 'to make sure [that the accused] has full understanding of what the plea connotes and of its consequence.'" *People v. Harris*, 459 N.E.2d 170, 175 (N.Y. 1983) (quoting *Boykin v. Alabama*, 395 U.S. 238, 244 (1969)) (alteration in original).  The constitutional guarantee of due process does not require that state courts inquire into the specific factual basis of a plea, although such an inquiry may be necessitated by circumstances such as a defendant's inconsistent responses to the court's questions. *See Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984).

Here, although the allocution was brief, it established to the court's satisfaction that Johnson intentionally caused damage to the building and that he "knew

somebody was present in the apartment when [he] set the fire." Dkt. 9-1 at 7.[9]  The

court also confirmed that Johnson was offering his guilty plea voluntarily after

discussion with his attorney.  *See* Dkt. 9-1 at 5-7, 16; *Willbright*, 745 F.2d at 781.

Establishing the elements of the crime and the voluntariness of the plea, even in general

terms, is sufficient to satisfy due process.  *See Willbright*, 745 F.2d at 780; *Harris*, 459

N.E.2d at 175-77.  Because the court's colloquy with Johnson showed that he

intentionally set the fires with knowledge that another person was (or was reasonably

likely to be) in the building, as well as that he was freely pleading guilty, the Appellate

Division's decision was not unreasonable.  *See* 28 U.S.C. § 2254(d)(1).  Johnson is not

entitled to habeas relief on this basis.

## CONCLUSION

Johnson has failed to show any basis for relief under 28 U.S.C. § 2254.

Accordingly, the Petition is denied.  Additionally, I decline to issue a certificate of

appealability because Johnson has not made a substantial showing of the denial of a

constitutional right.  *See* 28 U.S.C. § 2253.  Pursuant to 28 U.S.C. § 1915(a)(3), I certify

that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of Court shall enter judgment accordingly and close this case.

---

[9]   As I noted above, the court initially asked Johnson whether he "pretty much knew somebody else was present in the place," Dkt. 9-1 at 6, but subsequently asked the question more clearly, *see id.* at 7.  Johnson answered yes both times.  *Id.* at 6, 7.

The Clerk of Court is respectfully directed to mail a copy of this memorandum decision and the judgment to Johnson at his last address of record. Counsel for Respondent is directed to forward a copy of this memorandum decision and the judgment to Johnson, whose address is known to the State of New York because he remains on post-release supervision.

SO ORDERED.

Dated:      New York, New York
            March 31, 2023

Amended:    New York, New York
            April 3, 2023

_____
DENNY CHIN
United States Circuit Judge
Sitting by Designation